## STOCKER v ARNOLD et

Ohio Appeals, 2nd Dist, Darke Co

No 460.   Decided Aug 21, 1934

Wilbur D. Spidel, Greenville, for plaintiff in error.

Murphy & Staley, Greenville, and S. E. Mote, Greenville, for defendants in error.

## OPINION

By HORNBECK, PJ.

We have examined all the claimed errors.

Coming to consider the rulings of the court on the admission and rejection of evidence. At page 77 of the record on cross examination of defendant, Pearl Arnold, the court refused to permit the following question to be answered:

"Isn't it a fact that you and your husband went down to Jesse K. Brumbaugh, another lawyer at that time, that afternoon, isn't that right?"

We think that the admission or rejection of this evidence was within the discretionary right of the trial court. Hornbeck & Adams, §89.

Dr. Frank Clear, a nephew of the deceased, with whom she had lived, was called by the plaintiff in rebuttal. Thereupon a number of questions were propounded to Dr. Clear. Objections to many of these questions were properly sustained because they were not contradictory to any statements made by the defendants.

Dr. Clear was called by the plaintiff in rebuttal. This question was propounded on direct examination.

"Q. I want you to tell the court and jury whether or not any note was produced there by Harley Arnold or Pearl Arnold that morning? A. No note was produced."

Thereupon objection was made and considerable argument and discussion ensued, resulting in the court saying:

"I think you will be limited upon rebuttal as to whether or not the note was actually produced."

The court thereupon, upon motion, struck the answer from the record.

Further questions along the same line

of inquiry were propounded and objections sustained thereto and proffer of testimony tendered.

We have examined the record with particularity respecting this ruling of the trial court and are satisfied that it was correct. The testimony of the witnesses for the plaintiffs, touching the discussion of the note and the production thereof at the funeral parlors, is all to the effect that the note was produced before Dr. Clear came. This being true, there was no occasion or necessity of rebuttal testimony to meet that which was a proven fact, insofar as the plaintiff's testimony was concerned.

On cross examination H. P. Stocker said that nothing was brought up respecting the note in any conversation to which Dr. Clear was a party at the funeral parlors. Then, too, the defendant's testimony did not tend to establish that the note was produced in the presence of Dr. Clear. At page 66 of the record on direct examination Pearl Arnold, testifying on the subject, said that Harley had the note there and produced it but before Dr. Clear came in and to the same effect Harley Arnold testified at page 87 of the record.

Upon the whole record there was no dispute between the parties respecting the time when the note was produced and discussion was had respecting the same.

At page 77 on re-cross examination of Pearl Arnold this question was propounded:

"Q. Isn't it a fact that you and your husband went down to Jesse K. Brumbaugh, another lawyer, at that time, that afternoon, isn't that right?"

The court refused to accept the testimony and the record discloses that the witness was expected to answer "that immediately following the discussion at the funeral parlors they, having learned that Mr. Stocker did not accept Dr. Clear in place of them, immediately went to a lawyer with the expectation of forcing Dr. Clear to pay this bill." In our judgment there is no direct testimony to be found upon which it can be claimed that Dr. Clear agreed to pay this bill, although Stocker had indicated, in view of the testimony of some of the witnesses for the plaintiff, that he would accept the doctor if he would agree to pay the claim.

In view of this situation the testimony proffered was not competent nor relevant.

We find no prejudicial error in the admission or rejection of testimony.

It is claimed that the trial court violated §11447-7 GC in that in the general charge

he explained and qualified certain of the special charges given before argument. This court has held that §11447-7 GC relates to a written charge after argument and not to special charges before argument. Hornbeck and Adams Trial and Appellate Practice, 187. **Pratt v Byers, 41 Oh Ap 112, (11 Abs 514).**

The court in the special charges before argument and in the general charge required the jury to find: First, that the plaintiff extended credit to the defendants and Second, that there was an express contract wherein the defendants agreed to pay for the materials provided and services furnished for the deceased out of their own funds.

Herein is found the question of substance in the petition in error. The trial court was clearly right in requiring proof that the credit was extended to defendants. If this claim was not their direct obligation, it could not be collected because of the statute of frauds.

It was also further necessary that it appear that the extension of credit to the defendants was authorized and the court held that such authorization must have been express. There is substantial dispute on the first requisite of proof, but the jury could have found for the plaintiff on this issue.

Could the authorization to extend the credit to the defendants arise by implication or must it have been express? We are not committed to the proposition that these defendants (especially Harley Arnold) could not be bound by an implied contract to pay the account here sued upon. But every case must be determined on its own peculiar facts. Here the plaintiff upon his own theory did not extend the credit to the Arnolds upon the fact that they came to his place of business and ordered the material and services, but was put upon notice that there was controversy respecting an express promise by the defendants to pay the debt about to be made.

The record clearly discloses from the standpoint of the plaintiff that, after considerable discussion as to who should pay for the materials and services to be provided and when it was determined that Dr. Clear would not pay for them, the defendants left after Mrs. Arnold said in the presence of Mr. Arnold:

"We will let you know this afternoon, or later on, which outfit we will take.";

that pursuant to this express arrangement wherein it was understood that they, the

Arnolds, would let the plaintiff know which outfit they would take, Mrs. Arnold called by telephone and said that she would take the $355.00 outfit. This was an express authorization to extend credit to pay.

All the circumstances tending to support or contradict the testimony touching an express contract were in evidence. Though the pleading of the plaintiff indicated that he based his cause of action upon an implied contract his evidence disclosed that he relied upon an express contract. Though in some circumstances, liability might arise against the defendants upon an implied agreement to pay, it was not in this case. The plaintiff either succeeded or failed upon the theory of express contract. In view then of the state of the record and the respective claims of the parties, the special charges and the general charge touching the necessity of an express contract were not erroneous.

Upon the theory upon which this case was presented to the jury we are satisfied that the verdict and judgment as it affected Pearl Arnold may be sustained. There was tantamount testimony tending to show that she expressly bound herself to pay. But this was contradicted and circumstances of sufficient import to justify the jury in so finding supported the theory that she was not liable. However, upon an analysis of the whole record, we are unable to find that the jury was supported in its determination that Harley Arnold was not liable. If the testimony tending to establish his express agreement to pay was limited to that which so connected Mrs. Arnold we would not disturb the verdict. Throughout the whole record there appears a well developed purpose on the part of Harley Arnold to pay the obligation of his mother's funeral expenses. It seems that he intended to pay from the proceeds of the Clear note but that was merely the medium of his payment and did not affect his obligation to pay.

Although the answer of Pearl Arnold definitely avers that the plaintiff agreed to accept his payment, either from Dr. Clear directly or by the administrator of Mrs. Arnold, payment to be made by the note, the record does not support this conclusion. Clearly Dr. Clear did not agree to pay and an administrator, executor or estate of the deceased was at no time mentioned. The test of the contract is whether or not, in the event the Clear note was not paid, the plaintiff should lose his claim or Harley Arnold should lose the source from which he expected to pay the claim.

We think the latter is the more reasonable view of the matter.

Pearl Arnold in her testimony in chief at page 57 was interrogated as follows:

"Q. I wish you would tell the jury what was said by Mr. Arnold and Mr. Stocker there in your presence. A. Mr. Arnold had a note that Dr. Clear owed his mother, $800.00. He asked Mr. Stoker if he would accept this note as payment on the funeral expenses. Q. Yes, what did Mr. Stoker say? A. He said, 'Why, yes, he would.' He said, 'Frank will be here pretty soon.' Q. After Frank came,—after Dr. Clear came,—tell the jury whether or not there was any discussion then as to payments? A. Well, Mr. Arnold after,—we was standing there looking at the caskets, Mr. Stocker said to Frank, he said, 'He asked me whether I would accept the note which you owe to his mother for the expenses.' And Dr. said, 'Oh, you have talked it over have you?' And Mr. Stocker said, 'Well, he asked me if I would accept it.' Q. What else was said? A. Well, Frank stood there a little bit; he said, 'I couldn't accept any obligation under six months.' Q. Who said that? A. Dr. Clear. And Mr. Stocker said, 'I wouldn't expect it cash, Frank.' And Frank stood there a little bit. 'Well,' he says, 'It is Harley's mother; it is his obligation.' And that was just practically all that was said. There wasn't a word said to us."

They then discussed the credits that it was claimed Mr. Stocker suggested to be put upon the note.

At page 60 Mrs. Arnold testifying, direct examination:

"Q. I wish you would tell the jury, if you remember, Mrs. Arnold, what you told Mr. Stocker over the telephone? A. I asked him if Harley had been there yet, and he says 'No.' I said, 'Why, he wanted me to call and tell you for fear that he might not get down, that he had decided on the metal casket and the flesh-colored gown.'"

That Mrs. Arnold was speaking for her husband cannot be doubted in view of the fact that he was present at the undertaker's when the understanding was reached that they, the Arnold's, would call back to inform the undertaker of their determination respecting the choice of casket and gown and he does not deny her authority to speak for him. But the most convincing evidence supporting the liability of Harley Arnold is found at page 78:

"Q. Mrs. Arnold, after you and your husband and Frank Clear had made the visit to the—to Mr. Stocker's, I wish you would tell the jury whether or not Mr. Stocker came down to your house to take Mr. Arnold to the cemetery? A. The next day he did. Q. And what if any discussion did you have with Mr. Stocker at that time concerning the arrangements for the funeral? A. I answered the door. I told him that Harley had just come back from the cemetery. I also asked him if Frank Clear had said anything after we had left the day before. He says, 'No, he didn't have anything to say.' He went ahead there with a few remarks about Dr. When he got ready to leave, then, I says, 'Mr. Stocker, just as soon as Frank comes through with the money on that note to ma'am Harley we'll be down to settle with you."

Mr. C. L. Reck and Harley Arnold were present at the time that this conversation was had. Both testify to it and Mr. Reck says that Stocker said "that would be all right." And to like effect at page 76, cross examination of Pearl Arnold. She says that after receiving the notice from the plaintiff of the claim against her and Harley she called Mr. Stocker and said:

"Why just as soon as the estate is settled Harley says to tell you that he will be right down and settle with him."

From the testimony quoted and other evidence to be found in the record we are of opinion that the verdict of the jury in favor of the defendant, Harley Arnold, is not supported by and is contrary to the weight of the evidence. The judgment in favor of Harley Arnold will, therefore, be set aside and new trial granted.

Of course, we know nothing about the ability of Harley Arnold to pay, nor the purpose of the plaintiff to again try this case against Harley Arnold only. If the case is again tried, we believe that it would be more conducive to a proper understanding of the issues by the jury for the trial court to avoid the statement that it was incumbent upon the plaintiff to prove that the defendant expressly agreed to pay the plaintiff for the funeral services of his mother out of his own funds. This might not be misleading in an ordinary case but here the jury might get the impression that inasmuch as Harley Arnold expected to pay the claim of the plaintiff out of money which he realized from the Clear note, unless he got the proceeds of this note he would not be liable.

The principal question for the jury to determine was whether or not Harley Arnold authorized the plaintiff to extend the credit for his claim to Arnold.

We do not believe that any jury could say that the account was charged to anyone but the credit may have been properly extended to Harley Arnold, though the account was not charged to him. The fact that it was not so charged, however, is a circumstance to be considered on the question whether or not the plaintiff was authorized to extend Arnold the credit.

The judgment in favor of Pearl Arnold will be affirmed and judgment in favor of Harley Arnold will be reversed and cause remanded for new trial.

BARNES, J, concurs.