**MILES, Plaintiff, v. WOLFE, Defendant.**

Municipal Court, Findlay.

No. 48.   Decided August 24, 1956.

Robert E. Fuller, for plaintiff.
William C. Foster, for defendant.

286

## OPINION

By BOPE, J.

This is an action on an account, for an equal one third of a bill for funeral expenses, brought by the funeral director against one of three adult children of the decedent. It appears that the decedent's estate was insufficient to cover any substantial part of the bill, and that the defendant's brother and sister have each paid an equal one-third of the amount thereof.

The petition is in the short form authorized by statute. Defendant filed an answer of general denial, and has vigorously contested any liability.

After close and careful consideration, the court has determined that there are two questions to be decided here which, when settled, dispose of the case, namely: first, was the credit for these funeral expenses extended by the plaintiff to this defendant, and second, was such extension of credit authorized?

(Based on analysis by Judge Roscoe G. Hornbeck in a similar case, Stocker v. Arnold (1934), 18 Abs 213.).

The same questions may be reached in another way, thus: the case was tried on the theory of contract, and the effect of general denial was to require plaintiff to prove, by a preponderance of the evidence, all the essential elements of contract which he would have had to allege and prove at common law before the adoption of the statute permitting such action to be brought by a petition in the short form on an account. Two of these elements were **request** and **promise**, being closely related and which, if they existed in this case, would. undoubtedly constitute the **authorization** mentioned above as required by Judge Hornbeck.

. (References: Bates' Pleading, 4th ed., Secs. 761-b, 2637 et ff., 2652; **1 O. Jur. Accounts, pg. 180 to 195, Sec. 6 to 18; 42 O. Jur., Work, Labor and Materials, pg. 483, Secs. 2, 3 and Parts II and IV.**)

The first question posed, namely was the credit for these funeral expenses extended by the plaintiff to this defendant, is decided in favor of the plaintiff. The court so finds from the evidence, as a matter of fact, and without difficulty. The statement of account shows this was done, and the defendant did not really object to this evidence, call for any other sales tickets, time cards, books of account or seriously contend that such extension of credit was not made.

The second question is more difficult, and is the real question in dispute. Was such extension of credit authorized? In other words, did this defendant order (or request) this funeral, and did he make any promise (expressly or by implication) to pay for it? Defendant vigorously denies that he did either.

Let's consider the facts. Both parties stated that the defendant visited the plaintiff's place of business in company with his brother and sister and took part in the selection of a casket. The brother testified that defendant picked one out and said he liked it and "that's the one

we bought." The defendant testified that he picked out a first and second choice; that he said to the plaintiff, "I'm not doing it, they are," and left. The plaintiff testified that he showed 18 caskets to the three visitors, that there was some conversation both among the three and with him but, frankly, he didn't remember what was said or by whom, other than that the brother, Clarence, asked him if he would take a note from Ralph for a share of the expense and he said he would. No note was given. This testimony was given more than two years after the events took place.

In Stocker v. Arnold the petition was on an account but the proof consisted of circumstances tending to show an express contract. The jury was instructed that they must find an express contract wherein the defendants agreed to pay. They found for defendants, a finding reversed by the Court of Appeals as to the defendant son, on the weight of the evidence. The instruction, however, was held correct.

In the case at bar I believe the plaintiff relies not upon an express promise but upon an implied promise, to complete a contract. I quote from 42 **O. Jur. 483, Work, Labor and Materials, Sec. 2:**

"Contracts are ordinarily divided into express and implied contracts. Implied contracts are of two general classes, viz., contracts implied in fact, and contracts implied in law, otherwise known as quasi or constructive contracts. A contract implied in fact arises where circumstances have arisen or acts have been done which, according to the ordinary course of dealing, or the common understanding of men, show a mutual intention to contract. Both in express contracts and in contracts implied in fact, the consent of the party is necessary to the making of the contract.

"A contract implied in law, otherwise known as a quasi or constructive contract, is not a true contract; the contract is a mere fiction used to adapt the cause of action to the remedy of assumpsit. Such contracts are founded: (1) upon a record, (2) upon a statutory, official, or customary duty, or (3) upon the fundamental principle of justice that no one ought unjustly to enrich himself at the expense of another."

In the following section of the same work it is said at page 484:

"A meeting of the minds is essential to a contract implied in fact, —as distinguished from a constructive contract or one implied in law,— just as it is in an express contract."

Coming now to decide this case, in the light of the above principles, the cumulative effect of the evidence is such as to leave me unconvinced that the defendant herein ever intended to pay any part of the expenses of his mother's funeral. It seem to me that there was no meeting of his mind with that of the plaintiff on this point, in the absence of which I must hold that no true contract existed, either express or implied in fact.

Can a constructive or quasi contract be raised and held to exist here? Frankly, I would very much like to do so, for otherwise we have the sorry spectacle of an able-bodied man of mature years and responsible position in life accepting the benefit to himself and his family of having his mother decently buried in a casket of his own choosing, and

then, through a technicality, evading the strong moral obligation of paying his fair share of the cost.

But I take it that the parties to this suit want me to decide the case on the basis of what the law is, not what it perhaps ought to be. Now I may be misaken, for here we are getting into deep water, but this is what I think is the law of Ohio:

In the leading case of **Railway Company v. Gaffney (1901), 65 Oh St 104,** Chief Justice Minshall says at page 113:

". . . . where the procedure of the common law prevails, by the adoption of a fiction in pleading—that of a promise where none in fact exists or can in reason be supposed to exist—the favorite remedy of implied assumpsit could be adopted. This was so in that large class of cases, where suit is brought to recover money paid by mistake or (which) has been obtained by fraud. Here it is said the law implies a promise to repay the money, when it was well understood that the promise was a mere fiction, and in most cases without any foundation whatever in fact. The same practice was adopted where necessaries had been furnished an insane person, or a neglected wife or child. In all these cases no true contract exists. They are . . . . termed quasi contracts . . . . no more is meant than that the law imposes a civil obligation on the defendant to restore money so obtained, or to compensate one who has furnished necessaries to his wife or child, where he has neglected his duty to provide for them, or, by reason of mental infirmity, is unable to obtain them for himself . . . ."

In this language, as applied to the case at bar, I think the key word is "duty.' It is well recognized that a husband and father owes a legal duty to provide necessaries for his wife and child, but it has never been held, to my knowledge, that an adult child owes a legal duty, enforceable by civil action in the courts, to provide necessaries for his parent, even though aged and indigent. On the contrary, it has been stated positively that the very opposite is the rule of law. **30 O. Jur., Parent and Child, pages 630** and **632.** And I do not believe that a claim for furnishing funeral services stands any higher than one for furnishing necessities of life, such as groceries. For me to declare such a · legal duty to exist would be the first time such a rule were announced in Ohio. Perhaps such a rule is needed, to further the ends of justice. But in view of our statutory provisions for the burial of indigents at public expense, I do not believe it exists at present.

For the reasons given above, finding and judgment will be granted, reluctantly, for the defendant. An entry may be prepared so recording the action of the court, saving exceptions to the plaintiff.